## UNITED STATES *v.* MUNFORD and others.

*(Circuit Court, E. D. Virginia.* April 16, 1883.)

1. VENIRE OF JURORS IN UNITED STATES COURTS—JURY LAW OF 1879—DRAWING NAMES FROM SEVERAL BOXES.

    It is not a valid objection to the method of summoning juries for this district that the names are drawn from three boxes, all of them being supplied with names by the clerk of the circuit court in conjunction with the general jury commissioner.

2. SAME—SECTION 802, REV. ST.—COURT DIRECTING FROM WHAT BOX TO DRAW NAMES.

    Section 802 of the Revised Statutes confers authority upon the court to direct from what boxes the jurors should be drawn so as to be most favorable to an impartial trial, and so as not to incur unnecessary expense, or unduly burden the citizens of any part of the district with such services.

3. SAME—SUMMONING BY-STANDERS TO COMPLETE PANEL.

The jury law of 1879, and section 804 of the Revised Statutes, must be construed together, and when so construed they authorize the summoning from by-standers during any current term of talesmen enough to complete the panels necessary for the transaction of the business of the court.

Motion to Quash *Venire* of Jurors.

*Edmund Waddill,* U. S. Atty., and *John S. Wise,* for the United States.

*Wm. W. Crump, W. W. Henry,* and *Hill Carter,* for defendants.

HUGHES, J.  As it will become necessary to order a *venire* of jurors for the term to be held in July, to which this election case and others on the docket will be continued, we are called upon to revise the decision rendered the other day in this case on the motion to quash the *venire* of the present term.*  When that decision was rendered Judge BOND suggested that the same points might, in the event of a conviction, be again raised on a motion in arrest of judgment, and that we could then pass upon them after better opportunity for reflection. Such opportunity is now lost; but we have had time to make up a mature opinion on the points raised last Thursday, and I will now announce it in order to indicate those views of the law on which the next *venire* of jurors will be summoned.

1. It was complained that three boxes are used in this district for the deposit of the names of persons alternately selected by the jury commissioners, counsel maintaining that only one box was authorized by law.  The jury law of 1879, as to districts in which there is a clerk for each place of holding the United States courts, requires that there shall be as many boxes as there are clerks.  In our own district there happens to be but one clerk for the circuit court, although the court is held in three places.  It also happens that there are three clerks of the district court,—one for each of the three places at which that court is held,—and it would be necessary to a strict compliance with the law, as to all trials had in the district court, that there should be three boxes for the jurors of that court.  It has been the practice, however, to bring nearly all criminal indictments and informations in the circuit court.  And, therefore, while it would be perfectly legal to have as many as four boxes, one for each place of holding the district court, and a fourth box for the jurors intended to serve in the circuit court, yet it has come about that three boxes only have been used; all of them supplied with names by the clerk of the circuit court, in conjunction with Mr. Cabell, the general jury commissioner.

*See *U. S.* v. *Munford, post.*

I do not recollect how this plan of keeping three boxes, all supplied by Mr. Pleasants, in conjunction with Mr. Cabell, originated. I doubt whether it was suggested by myself. I certainly have no recollection of having originated the plan. Be that as it may, however, I think the plan approaches as nearly to a compliance with the directions of the jury law of 1879 as is practicable in this district. There is certainly no shadow of authority to be found in that law for the proposition that there shall be only one box for the names of jurors used in this district. We think, therefore, after mature consideration, that this ground of objection to the plan of summoning juries for the district is not sustained by the law of 1879, and we shall continue to use three boxes.

2. Another reason for quashing the *venire* of the present term, which was urged by counsel for the defense in the present case, was that I had directed the clerk to draw 30 names from the body of the district, and particularly to draw 12 from the Alexandria box, 12 from the Norfolk box, and only 6 from the Richmond box. This was complained of as an illegal discrimination against Richmond. As to the power of a judge of the court to give such instructions as I gave in this respect there is no doubt, for section 802 of the Revised Statutes is express and emphatic on the subject. It provides that—

"Jurors shall be returned from such parts of the district, from time to time, as the court shall direct, so as to be most favorable to an impartial trial, and so as not to incur unnecessary expense, or unduly to burden the citizens of any part of the district with such services."

Here was express authority conferred upon me by law to direct from what boxes the jurors should be drawn; and here is indicated the precise object which I had in view when my instructions to Mr. Pleasants were given. The second ground of the motion which was made the other day to quash the *venire* is therefore untenable; and I shall give the clerk, for reasons too obvious to need to be stated, the same instructions as I gave with reference to the present *venire*.

3. The remaining objection which was then urged to the present *venire* was that the number of jurors drawn for it from the boxes having proved insufficient, others were summoned by the marshal,—not in accordance with the provision of the law of 1879, which directs that "all jurors, including those summoned during the session of the court, shall be publicly drawn" from the boxes,—but that he summoned men of his own selection. The additional jurors summoned in the present instance were selected under an order issued by myself on the fifth of April, which was the fourth day of the present term,

directing the marshal to summon from by-standers as many petit jurors as would be necessary, with those already in attendance, to make up the whole number of the *venire* to 24 men. The jury law of 1879 is a general law relating to "all jurors," and has been held by Chief Justice WAITE and Judge BOND, sitting together, not to conflict with section 804 of the Revised Statutes, which relates particularly to petit jurors. The law of 1879 expressly repeals some of the sections of chapter 15 relating to juries, but does not repeal other sections, so that, on the maxim *expressio unius est exclusio alterius,* section 804 still remains in force. That section provides that—

" When, from challenges or otherwise, there is not a petit jury to determine any civil or criminal cause, the marshal or his deputy shall, by the order of the court in which such defect of jurors happens, return jurymen from by-standers sufficient to complete the panel."

It was under this section that my order to the marshal of the fifth instant was issued; and it was because jurors had been thus summoned by the marshal, and not drawn from the boxes, that this *venire* was objected to by the defense in the present case. It is obvious that a literal compliance with the law of 1879, directing that jurors required in the emergencies occurring during the term of a court shall be drawn from boxes and then summoned, is often impracticable. To send out, while making up a jury during the term of a court, for men selected by lot from all the localities in which they may happen to reside throughout a large district, hundreds of miles in dimensions, would entail most embarrassing delays. It would also be attended by great uncertainties; for it is obvious that the jury commissioners cannot be well acquainted with the men whose names they put in the boxes; scattered as these are over an area embracing 60 or 70 counties and cities, or know with certainty either their places of residence or their exact names, or the condition of their health, or whether or not they have removed from the district, or have died. The court can, therefore, have no assurance that the men thus selected by lot will, when sent for, be found and brought into court from the greater or less distances from which they are summoned. A literal adherence to the jury law of 1879, and a discardal of the unrepealed provisions of section 804, would work in frequent cases, and would have operated in the present case, a delay of proceedings equivalent to a paralyzing obstruction of the business of the court. Congress could not have meant to impose upon the proceedings of courts the delays adverted to.

The jury law of 1879 and section 804 must, therefore, be construed

together, and when so construed I do not see that there can be any irregularity or illegality in summoning from by-standers during any current term *talesmen* enough to complete the panels necessary for the transaction of the business of the court. I think the court ruled in strict accordance with the letter and in full accordance with the spirit of the law in refusing, last Thursday, to quash the *venire* from which the panel of the jury in the present case was made up. And I here announce that if, at the trial of these election cases, or of any other cases, it shall be found that from "challenges or otherwise" panels cannot be completed from drawn jurors, I will direct the marshal to summon from by-standers a sufficient number of jurors to "complete the panels."