# MARYLAND REPORTS.

## APRIL TERM, A. D., 1893.

ALEXANDER LAZARD, and others, Surviving Partners, Trading as LAZARD FRÈRES *vs.* THE MERCHANTS' AND MINERS' TRANSPORTATION COMPANY.

*Secs. 1 and 2 of Art. 14 of the Code—Carrier—Bills of Lading—Principal and Agent—Ratification—Evidence.*

Section 1 of Article 14 of the Code, provides that all bills of lading, if executed in this State, or, being executed elsewhere, shall provide for the delivery of goods within this State, shall be negotiable instruments in the same sense as bills of exchange and promissory notes, unless it be provided in express terms to the contrary on the face of the bills; and section 2 provides that every such bill of lading shall be conclusive evidence in the hands of every *bona fide* holder for value thereof without notice to the contrary, that the goods mentioned therein had been actually received by such person or corporation. Certain bills of lading were issued at Savannah, Georgia, acknowledging the receipt of cotton to be transported by the steamer of one company to Baltimore, and there to be delivered to the steamer or steamers of another company for transportation to the port of Bremen, and there to be delivered to the shipper or his assigns, and stipulating that delivery to the latter company shall absolve the former from all liability, and that the liability of the latter shall begin only upon the actual delivery to its steamer or steamers at Baltimore. HELD:

That such bills of lading not providing for the delivery of the cotton within the State, its final destination being the port of Bremen, were not embraced within the provisions of the Code.

The acceptance by a principal of a transfer of the property of his agent voluntarily offered by him to cover any loss which the former might sustain by the unauthorized act of the latter in

1                         v. 78.

issuing bills of lading for goods not delivered, does not constitute a ratification of such act, the same having been immediately repudiated by the principal when made known to him.

Bills of lading issued to a shipper, a citizen of Georgia, by two transportation companies, one of which, a Maryland corporation, was the owner of a line of steamers running between Savannah and Baltimore, and having an office and agents in the former place to receive freight for transportation, covering cotton to be carried from Savannah to Bremen, *via* Baltimore, must be considered as having been executed in Georgia.

In an action to recover the value of certain bales of cotton embraced in bills of lading stipulating for its carriage from Savannah to Bremen, *via* Baltimore, evidence as to the price of cotton in Baltimore is inadmissible, the contract being for its delivery at Bremen and not at Baltimore, and the damages, if any, for breach of the contract would be the value of the cotton at Bremen.

A witness having proved the signature of the agent to the bills of lading, was asked on cross-examination by the defendant company whether the agent was not forbidden to sign bills of lading for goods and commodities when they were not actually delivered to the defendant company, to which he replied, "Never to my knowledge," and then added that it was almost certain that he was not so forbidden, because it would have been prohibitory of business at that place, as the custom of the port was to sign bills of lading on railroad guaranties to deliver cotton to a specified steamer.   HELD:

That the statement of the witness was not responsive to the question, but was the mere expression of his opinion, and not testimony based upon knowledge.

Although the agent had signed the bills of lading, acknowledging the receipt of the cotton, it was competent for him to prove that the cotton had not in fact been delivered, and to explain the circumstances under which he was induced to sign the bills.

Evidence in regard to usage prevailing among steamship companies to issue bills of lading upon railroad and cotton press receipts was properly stricken out, it appearing that the bills in controversy were not issued upon such receipts, but upon the promise to deliver them to the agent.

Evidence also in regard to the understanding among bankers in New York that the buyer always assumes that the goods men-

tioned in a bill of lading have been actually delivered, is inadmissible; as the liability of the carrier under a bill of lading does not depend upon the understanding of bankers or brokers in the City of New York, but is governed and determined by the settled principles of commercial law.

APPEAL from the Baltimore City Court.

The case is stated in the opinion of the Court.

The *First, Second, Third* and *Fourth Exceptions*, taken to the rulings of the Court upon questions of evidence, are sufficiently set out in the opinion of this Court.

*Fifth Exception.*—The plaintiffs offered the following twelve prayers :

1. It being admitted that the defendant is a body corporate, incorporated by the Acts of the General Assembly of Maryland, of 1852, ch. 153, 1868, ch. 130, and 1876, ch. 76, offered in evidence, the jury are instructed that if they find from the evidence that the defendant was, on or prior to June 19th, 1891, and ever since has been, the owner of a line of steamships or vessels sailing between the City of Savannah, in the State of Georgia, and the City of Baltimore, in the State of Maryland, and engaged in the business of carrying freight and passengers by means thereof, and that prior to and on the 19th and 20th days of June, 1891, and for some time thereafter, a certain William E. Guerard was the defendant's agent in said City of Savannah, and was authorized by it to execute and deliver on its behalf bills of lading for goods to be transported from said City of Savannah to the said City of Baltimore on said steamships or vessels, and that the said William E. Guerard, on or about the 19th and 20th days of June, 1891, signed the three bills of lading produced and offered in evidence in this case by the plaintiffs, and delivered the same, or caused them to be delivered, to Edward Moon Green,

trading as Charles Green's Son & Co., in said City of Savannah, and that the said Edward Moon Green drew and endorsed the two drafts or bills of exchange produced and offered in evidence in this case by the plaintiffs and dated June 20th, 1891, and attached to the said drafts the said three respective bills of lading, and also endorsed in blank the said bills of lading, and that the said drafts and the bills of lading thereto attached thereafter, on or about the 22nd day of June, 1891, having been so endorsed, were in the possession of Hollins & Co., bankers of New York City, and Hollins & Co., then offered the same to the plaintiffs for sale through a foreign exchange broker, to wit, one John Surin, and that the plaintiffs on or about June 22nd, 1891, purchased the same from Hollins & Co., and paid therefor to them an aggregate cash price of $21,340, and shall further find that, in making the said purchase the plaintiffs acted in good faith and without actual notice to the contrary, that all of the cotton mentioned in said bills of lading had been actually received by and was actually in the possession and custody of the defendant at the time of the signing and delivery of the said three bills of lading by the said William E. Guerard, according to the tenor of the said bills of lading, and for the purposes and to the effects therein stipulated or provided, and without notice of any facts or circumstances tending to cast doubt upon or arouse suspicion in reference to the title of the vendor of the plaintiffs to the said drafts and bills of lading; and if the jury further find that the defendant has not in fact delivered to the steamships of the Norddeutscher Lloyd the cotton mentioned in said bills of lading, and shall also find that a reasonable time for such delivery thereof has elapsed and that the plaintiffs have demanded of the defendant that it make such delivery of said cotton, then the plaintiffs are entitled to a verdict in this case, even though the jury may find

from the evidence that the said cotton was in fact never received by the defendant or came into its possession.

2. If the jury find for the plaintiffs, the amount of the verdict should be the sum of $21,412.60 (that being the equivalent in lawful currency of the United States for 4,400 pounds sterling, which appears by the drafts mentioned in said prayer to be the face value thereof,) together with interest thereon from September 3rd, 1891, (which appears from the face of said drafts to be the due date thereof,) to the date of verdict, less $1,400.34 (that being the amount of freight called for by said bills of lading,) provided the jury shall further find that the value of the cotton in said bills of lading mentioned was, at the time when the jury shall find it should have been delivered by the defendant at Baltimore to the steamers of the Norddeutscher Lloyd according to the terms of the bills of lading, equal to or greater than $21,412.60 ; and if the jury shall find that the value of the said cotton when it should have been so delivered at Baltimore was less than $21,412.60, then their verdict should be for the amount which they shall find to have been the value of said cotton, with interest thereon from the time at which the jury shall find it should have been so delivered up, to the date of verdict, less the amount of freight called for by said bills of lading.

3. That the bills of lading produced by the plaintiffs and offered in evidence in this case are conclusive evidence that all of the cotton in said bills of lading mentioned and described, was actually received by, and was actually in the possession and custody of, the defendant at the time of the issuing of the bills of lading, according to the tenor thereof, and for the purpose and to the effects therein stipulated or provided ; provided, the jury shall further find that the plaintiffs acquired the said bills of lading *bona fide* and for a valuable consideration, without actual notice to the contrary that all of

the cotton therein mentioned and described had been actually.received by and was actually in the possession and custody of the defendant in the manner aforesaid, at the time of issuing the said bills of lading.

4. If the jury find from the evidence that William E. Guerard was on or about June 19th and 20th, 1891, the defendant's agent in the City of Savannah, and was authorized by it to execute and deliver on its behalf bills of lading of the form of those offered in evidence for goods to be transported to Baltimore City, and that said Guerard, on or about the 19th and 20th days of June, 1891, signed and delivered to Edward Moon Green, trading as Charles Green's Sons & Co., the bills of lading offered in evidence, and that said Green indorsed the said bills of lading, and that the plaintiffs purchased them for value on the dates shown in evidence, in good faith and in due course of their business, and without knowledge or intimation of any facts casting doubt upon the title of their vendor, and if the jury shall further find that said bills of lading were, in fact, delivered by said Guerard, to the said Green, in consideration of the simultaneous delivery by Green to Guerard, of a written due-bill or undertaking on the part of Green to produce and deliver to the defendant the cotton described in said bills of lading, and that it was then the course of dealing between said Guerard and Green, for Guerard to issue to Green the defendant's bills of lading for cotton to be transported by the defendant upon the receipt and on the faith of similar due-bills or undertakings, executed by Green, for the production of the cotton mentioned in such bills of lading, then the plaintiffs are entitled to a verdict, provided the jury shall further find the defendant knew and acquiesced in such course of dealing between Guerard and Green, as to the issue of bills of lading.

5. The words in the three bills of lading offered in evidence by the plaintiffs contained, to wit, "Or Order,"

signify in law the assent of the maker of said bills to the transfer thereof to an innocent holder prior to the arrival of the cotton therein described at the City of Baltimore, and that, therefore, if the jury believe from the evidence that, on or about the 19th and 20th days of June, 1891, a certain William E. Guerard was the defendant's agent in the City of Savannah, and was authorized by it to execute and deliver on its behalf bills of lading of the form of those offered in evidence, for goods to be transported from Savannah to Baltimore, and that the said Guerard, on or about the 19th and 20th days of June, 1891, signed and delivered out of his possession the said three bills of lading, and that the same were endorsed by the person to whom they were issued, and that the plaintiffs purchased them for value at the date shown in evidence, in good faith and in due course of their business, relying on the truth of the recital in said bills of lading, that said cotton had been received by the defendant company, and shall further find that the plaintiffs were at that time ignorant of any facts or circumstances tending to cast doubt upon the title of their vendor, then the verdict should be for the plaintiffs, even if the jury believe from the evidence that the defendant never, in fact, received the cotton mentioned in the bills of lading.

6. That if the jury believe from the evidence that the steamships of the defendant referred to in the three bills of lading offered in evidence in this case, have been since prior to June 19th, 1891, registered at and in the port of Baltimore, in the State of Maryland, as their home port, and have been since then regularly engaged in plying between the port of Baltimore, in the State of Maryland, and the port of Savannah, which is outside of the State of Maryland, then the said bills of lading must be construed according to the laws of Maryland, and the jury will therefore disregard all evidence intro-

duced into this case by the defendant tending to contradict the recital in said three bills of lading that the defendant had received the cotton therein mentioned previous to issuing the bills of lading.

7. That the three bills of lading offered in evidence by the plaintiffs, on their face and by their respective terms, provide for and require that the cotton therein described should be delivered in the City of Baltimore by the defendant, and are therefore bills of lading within the meaning of Article 14, of the Code of Public General Laws of Maryland, and, if the jury believe from the evidence that William E. Guerard was the defendant's agent in the City of Savannah, on or about the 19th and 20th days of June, 1891, and was authorized by it to execute and deliver on its behalf bills of lading for goods to be transported from the City of Savannah to the City of Baltimore, and shall further believe that, on or about the dates aforesaid, the said Guerard signed the said bills of lading and delivered the same to Edward Moon Green trading as Charles Green's Son & Co., and that the said Green endorsed the same, and that the said bills of lading were purchased by the plaintiffs for value, in good faith, in the due course of their business, and without notice or intimation of any facts or circumstances tending to arouse suspicion as to the title thereto in their vendor, and that the plaintiffs now own and hold the said bills of lading, then their verdict must be for the plaintiffs.

8. If the jury find the facts mentioned in the first prayer of the plaintiffs, and shall further find that at the time the said bills of lading were signed and delivered to Edward Moon Green, the said Green, in consideration thereof, delivered to said William E. Guerard, a written due-bill or undertaking to produce or deliver to the defendant the cotton described in said bills of lading, and that it was then the course of dealing between the

said Guerard and Green, for Guerard to issue to Green the defendant's bill of lading for cotton to be transported by the defendant, upon the receipt and on the faith of similar due-bills or undertakings for the production of the cotton mentioned in such bills of lading, then the plaintiffs are entitled to a verdict, provided the jury shall further find that the defendant knew and acquiesced in said course of dealing between Guerard and Green.

9. If the jury believe from the evidence in this case that the agent of defendant at Savannah, signed and issued to Green & Co., the bills of lading sued on, and that Green & Co. endorsed them, and that the plaintiffs purchased them in good faith for value in the due course of business, relying on the truth of the recital therein that the defendant had received said cotton, then the burden of proof is on the defendant company to make good its third and fourth pleas that Guerard, its agent at Savannah, issued said bills fraudulently and in collusion with said Green & Co., both said agent and Green & Co., then and there knowing that said bills represented no cotton whatever. It is not sufficient to establish defendant's pleas of fraud to show by the evidence that Guerard, defendant's agent, was merely negligent in not ascertaining whether or not Green & Co. had the said cotton in their possession if there was not fraud or collusion practiced by said Guerard.

10. That if the jury believe, from the evidence in this case, that the president of the defendant company, after the bills of lading sued on came to the company's knowledge, received in behalf of the company from Guerard, who signed said bills of lading, for it to apply toward its liability under said bills of lading, moneys or property equal, or nearly equal to the cotton therein mentioned, or then received from said Guerard, and still retains an amount of property, equal or nearly equal to

the value of said cotton, and that the plaintiffs are the owners of said bills of lading for value and in good faith without notice of any facts tending to cast doubt upon the title of the vendor of said bills of lading, then their verdict should be for the plaintiffs for the amount of said moneys or the value of said property so received by the president of the defendant from Guerard on its behalf, provided the same does not exceed the sum of $21,412.60, with interest thereon from September 3rd, 1891, to date of verdict, less $1,400.34, and, if it does exceed the same, then the verdict should be the sum of $21,412.60, with interest from September 3rd, 1891, to date of verdict, less $1,400.34.

11. That the jury are the sole judges of the weight of the evidence and the credibility of the witnesses, and in considering the fact or inquiry whether or not the cotton described in the bills of lading sued on was received by the defendant company, they will take into consideration the said · bills and the statement therein that said cotton was received, and all the evidence in the case bearing on that point or inquiry.

12. If the jury find from the evidence, that William E. Guerard was, on or about June 19th and 20th, 1891, the defendant's agent in the City of Savannah, and was authorized by it to execute and deliver on its behalf bills of lading for goods to be transported to Baltimore City, and that said Guerard, on or about the 19th or 20th days of June, 1891, signed and delivered to Edward Moon Green, trading as Charles Green's Son & Co., the bills of lading offered in evidence, and that the plaintiffs purchased them for value on the dates shown in evidence, in good faith and in due course of their business, and without knowledge or intimation of any facts casting doubt upon the title of their vendor, and if the jury shall further find that said bills of lading were in fact delivered by said Guerard to the said Green in consider-

ation of the simultaneous delivery by Green to Guerard of a written due-bill, or undertaking on the part of Green to produce and deliver to the defendant railroad or compress company receipts for the cotton described in said bills of lading, then the plaintiffs are entitled to a verdict; provided the jury shall further find that after the president of the defendant was fully apprised by Guerard of the circumstances of the issue of the bills of lading, he accepted from Guerard on behalf of the defendant, under the circumstances testified to by Guerard, the deed offered in evidence and an assignment of the stocks and bonds as testified to by Guerard.

The defendant offered the following prayer :

The plaintiffs having offered no sufficient evidence that the cotton mentioned in the bills of lading, offered in evidence, was delivered to the defendant, or ever at any time came into its possession; and it sufficiently appearing from the evidence that said cotton was not delivered to the defendant, and never at any time came into its possession, and as there is no evidence from which the jury can find that the defendant authorized their agent to issue the said bills of lading without the receipt of the cotton therein mentioned, and as there is no evidence of any subsequent ratification or adoption by the defendant of the said act of the said agent, therefore the verdict of the jury must be for the defendant.

The defendant specially excepted to the granting of the fourth and eighth prayers of the plaintiffs, because there was no evidence in the case that the defendant knew of, and acquiesced in, such course of dealing between Guerard and Green mentioned in said prayers respectively.

The defendant also specially excepted to the granting of the plaintiffs' second prayer, because there was no evidence as to the value of said cotton at Baltimore ; and because there was no sufficient evidence as to the value of said cotton at the port of Bremen.

The defendant also specially excepted to the granting of the plaintiffs' tenth prayer, because there was no evidence that the president of the company received from Guerard moneys or property for it to apply towards its liability under said bills of lading, in the manner expressed in said prayer, because there was no evidence that the president of said company received and still retains property, in the manner expressed in said prayer.

The Court (WRIGHT, J.,) rejected all the prayers of the plaintiffs, except the ninth, which it granted. It also granted the prayer of the defendant.

The jury rendered a verdict for the defendant under the instruction of the Court, and judgment was entered thereon. The plaintiffs appealed.

The cause was argued before ROBINSON, BRYAN, FOWLER, ROBERTS, McSHERRY, and BRISCOE, J.

*Samuel D. Schmucker, George Whitelock,* and *Jefferson Chandler,* for the appellants.

*Bernard Carter,* and *Wm. Pinkney Whyte,* for the appellee.

ROBINSON, C. J., delivered the opinion of the Court.

This is an action of *assumpsit* against the defendant, the owner of a line of steamers running between Baltimore and Savannah, Georgia, to recover the value of certain bales of cotton, in all valued at $23,500, described in three bills of lading, issued by the defendant's agent at Savannah, and of which the plaintiffs became *bona fide* holders for value, in the ordinary course of their business as bankers. The breach set out in the declaration is the failure of the defendant to transport the cotton to Baltimore, and there deliver the same to the steamers of the North German Lloyd, for transportation to Bremen.

Lazard vs. Merchants' and Miners' Transportation Co.

The main question arises upon the demurrer to the defendant's third plea, which alleges that the cotton mentioned in the bills of lading never was in fact delivered on board of the defendant's steamer; and, further, that the bills of lading were issued without authority of the defendant, and in fraud of the defendant, by a fraudulent combination between one W. E. Guerard and Charles Green's Son and Company.

If the cotton never was delivered on board of the defendant's steamer, and this the demurrer admits, there could be no failure of contract on the part of the defendant to carry and deliver it to the shipper or his assigns, for the receipt of the goods lies at the foundation of the contract to carry and deliver. No principle is better settled by the commercial law, than that neither the master of the ship nor the agent of a transportation company has the right to sign bills of lading, until they have been actually put on board of the ship, or delivered into the possession of the company. And if a master or agent signs a bill of lading for goods which have not been delivered to the carrier, the owner of the ship, or other means of transportation is not liable either to the shipper, or to one dealing with or making advances in good faith upon the bill of lading. It is hardly necessary to say that bills of lading are not by the commercial law negotiable in the same sense as bills of exchange and promissory notes. They are merely the evidence of ownership, general or special of the property mentioned in them, and the right to receive said property at the place of delivery; and one making advances of money upon them does so at his own risk, and with notice of the limitation as to the power or rights of the master or agent to sign the same. *Balto. & Ohio Railroad Co. vs. Wilkens,* 44 *Md.,* 11 ; *Pollard vs. Vinton,* 105 *United States,* 7 ; *Friedlander vs. Texas, &c. Railway Co.,* 130 *U. S.,* 424; *McLean vs. Fleming, Law Repts.,* 2 *House Lords, Sc.* 128.

This is not disputed, but the plaintiffs in support of the demurrer rely on sections 1 and 2 of Article 14 of the Code. Section 1 provides, that all bills of lading, if executed in this State, or being executed elsewhere, which shall provide for the delivery of goods within this State, shall be negotiable instruments in the same sense as bills of exchange and promissory notes, unless it be provided in express terms to the contrary on the face of the bills, &c., &c.

And the second section provides that every such bill of lading shall be conclusive evidence in the hands of any *bona fide* holder for value thereof without notice to the contrary that the goods mentioned therein had been actually received by such person or corporation, notwithstanding that the fact may be otherwise, and that the officer or agent had no authority to issue bills of lading, except for goods actually received.

The provisions of the statute, it will be observed, are limited to bills of lading *executed in this State*, or *being executed elsewhere, shall provide for the delivery of goods within the State.* And as the bills of lading in question were not executed in this State, but issued by the defendant's agent at Savannah, Georgia, the only question upon the demurrer is whether they provide for the delivery of the cotton in this State within the meaning of the statute? And this depends upon the construction and meaning of the bills of lading themselves, and upon the construction of the statute, as to what constitutes a delivery of goods in this State.

The parties to the bill of lading set out in the declaration are the defendant, the North German Lloyd Company and Green's Son and Company, the shippers, or their assigns. What then is the contract thus entered into by these parties? At the top of the bill of lading we find printed :

"Merchants' and Miners' Transportation Company and Norddeutscher Lloyd."

Lazard *vs.* Merchants' and Miners' Transportation Co.

"From Savannah, Georgia, to Bremen *via* Baltimore and Bremerhaven."

These head lines, as we read them, mean, and can only mean, the transportation of the goods mentioned in the bill of lading by the two companies, the Merchants' and Miners' Transportation, and the North German Lloyd, from Savannah to Bremen, the port of delivery, by the way of Baltimore and Bremerhaven. Then follows an acknowledgment of the receipt of the cotton to be transported by the defendant's steamer to Baltimore, and there to be delivered to the steamer or steamers of the North German Lloyd for transportation to the port of Bremen, and *there to be delivered unto order or assigns*, he or they paying freight at the rate of fifty-four cents per hundred pounds. Then there is a stipulation, that the delivery of the cotton in good order to the North German Lloyd steamers at Baltimore, shall absolve the defendant from all liability in respect thereof, and that the liability of the North German Lloyd Company shall begin only upon the actual delivery of the cotton to their steamers at Baltimore.

Now the contract thus made between them was, it seems to us, a contract on the part of the two transportation companies to carry the cotton from Savannah to Bremen, and *there to deliver it to the shippers or their assigns*, on payment *there by them of freight*, at the rate of fifty-four cents per hundred pounds for the transportation over the entire route from Savannah to Bremen. Bremen was beyond all question the port of destination, for *there* the cotton was to be delivered to the order of the shipper, and until delivered no freight was to be earned, nor was any to be paid. And as the route established by the two companies for the transportation of the cotton from Savannah to Bremen lay through the port of Baltimore, and as the line of steamers forming that portion of the through route between Savannah and Balti-

more belonged to the defendant, and the line of steamers forming that portion of the through route between Baltimore and Bremen belonged to the North German Lloyd, it was agreed that the cotton should be transported from Savannah to Baltimore by the defendant's steamer, and there delivered by the defendant to the steamer of the North German Lloyd, and to be carried on the steamer of said company over so much of the through route from Savannah to Bremen as lay between Baltimore and Bremen ; each company being responsible only for the carriage of the cotton over its portion of the through route.

The contract of the defendant was, as we have said, for the transportation of the cotton from Savannah to Baltimore, and there to be delivered by the defendant to the steamer of the North German Lloyd for transportation to Bremen; and the argument is that the term delivery is used in the statute without any qualification, and is to be construed in its broadest sense, and that the delivery of the cotton by the defendant to the North German Lloyd at Baltimore, is a delivery within the meaning of the statute, even though the delivery was for the purpose of transportation out of the State, and even though the final port of destination was Bremen. To such a construction of the statute we cannot agree. The Act of 1876, ch. 262, now codified as Article 14 of the Code, was, as we all know, passed within a few weeks after the decision in the case of *Balto. & Ohio Railroad Co. vs. Wilkens,* 44 *Md.,* 11, where in a suit by a *bona fide* purchaser of a bill of lading issued by the defendant's agent, in the State of Illinois, for the transportation of certain car loads of grain to Baltimore, it was decided that the transportation company was not liable, because the grain had never in fact been delivered to the company. Bills of lading were not, the Court said, negotiable in the same sense as bills of exchange and promissory notes. Within a few weeks after the rendi-

Lazard *vs.* Merchants' and Miners' Transportation Co.

tion of the judgment in that case, the statute now in question was passed, making bills of lading negotiable in the same sense as bills of exchange and promissory notes, and making them conclusive evidence that the goods therein mentioned had been delivered to the carrier, but the Legislature was careful to limit the provisions of the Act, to bills of lading *executed in the State,* or being executed *elsewhere,* provided for the delivery of the property in the State. And by delivery of goods under a bill of lading, the Legislature meant and could only mean, it seems to us, such a delivery as is recognized by the commercial law under a bill of lading, that is a delivery at the port or place of destination to the shipper or his assigns. It never meant the delivery of goods from one carrier to another carrier *in transit through* the *State.* And such was the contract of delivery on the part of the defendant,—a contract to carry the cotton from Savannah to Baltimore, and there deliver it to the North German Lloyd, to be transported and delivered to the shipper or his assigns at the port of Bremen, the end of the carriage.

The liability of the defendant for the transportation of the cotton ended, it is true, by the delivery of the cotton to the steamers of the North German Lloyd at Baltimore, but the two carriers had the right beyond all question to contract that each should be responsible to the shippers only for the safe transportation of the cotton over its respective portions of the through route to Bremen.

This limitation of their liability could not, however, in any manner affect the construction of the statute or give to the term "delivery" as therein used, a meaning never contemplated by the Legislature. So by no fair rule of construction can it be said that the bills of lading in question provide for the delivery of goods in this State within the meaning of the Code. And, this being so,

the demurrer to the defendant's third plea was properly overruled, and the plaintiffs' first, third, fifth, sixth and seventh instructions were properly refused.

We have treated the bills of lading as having been executed in another State, and so it seems to us they must be treated. The defendant was incorporated, it is true, under the laws of this State, but it was the owner of a line of steamers running between Savannah and Baltimore. It had an office and agents at Savannah for the purpose of receiving freight for transportation. The goods intended to be carried by the bills of lading were to be shipped to Bremen, and there to be delivered to the shipper or his assigns. They were never intended to be in Baltimore except for the purpose of being transferred from the steamer of the defendant to the steamer of the North German Lloyd, to be carried by the latter to Bremen, thus forming a continuous voyage between Savannah and Bremen. The contract purported to have been made by the bills of lading was a contract between the two transportation companies and the shipper, a citizen of Georgia. And such being the case, the bills of lading themselves must be considered as being executed in the State of Georgia.

We agree, too, there is no evidence from which it could be inferred that Guerard, the agent, was authorized by the defendant to issue the bills of lading before the delivery of the cotton by Messrs. Green's Son and Company. He had been in the habit, it is true, of issuing bills of lading upon their promise to deliver to him railroad or cotton press receipts that the cotton had been received by the railroad or compress company for transportation by the defendant's steamer. But this he did upon his *own responsibility*, and without, he says, the *consent or knowledge of the defendant*. And there was evidence offered, too, subject to exception, of a custom at the port of Savannah of issuing bills of lading, upon

railroad and cotton press receipts that the cotton had been received by the railroad or cotton press company for delivery to the steamers. But the bills of lading now in question were not issued by Guerard, the agent, upon either railroad or cotton press receipts, but upon the promise of Green and Company to deliver these receipts to him. And such evidence being irrelevant, it was subsequently stricken out on the motion of the defendant. And in saying this, we are not to be understood as intimating an opinion, that the defendant would have been liable upon the bills of lading, even if they had been issued by the agent in pursuance of such custom. That is a question which it is quite unnecessary to consider.

We agree too, that there is no evidence of a ratification by the defendant of the unauthorized act of the agent in issuing the bills of lading. As soon as he found that Green and Company had failed, and were in fact unable to deliver to him the railroad and cotton press receipts according to their promise, he came to Baltimore, and for the first time informed the defendant as to his action in the matter, and voluntarily offered to transfer his property to the proper officer of the defendant, to indemnify it from any loss it might sustain by reason of the issuing of the bills of lading. The defendant at once repudiated the unauthorized act of its agent, and at once denied all liability on account of the same. And the mere fact that it accepted a transfer of the agent's property, voluntarily offered by him to cover any loss it might sustain, cannot in any sense be considered as a ratification or an acquiescence in the unlawful act of its agent.

As to the common count for money had and received by the defendant for the use of the plaintiffs, it is only necessary to say, that no evidence was offered in support of this count. The defendant accepted a transfer

of property by Guerard, its agent, but this was not property belonging to the plaintiffs, nor was the transfer accepted by the defendant for their use. It was property belonging to the agent and transferred by him to the defendant, to cover any loss it might sustain on account of the issuing of the bills of lading by him. If no loss is thereby sustained, and if the agent be liable to the plaintiffs as *bona fide* holders of the bills of exchange, this liability may be enforced against him and against the property thus conveyed to the defendant. As there is no evidence from which the jury could reasonably find that the cotton mentioned in the bills of lading had been delivered to the defendant, or that the defendant had authorized their agent to issue said bills of lading without the receipt of the cotton, or that the defendant had ratified or adopted the act of the agent, there was no error in refusing the several prayers offered by the plaintiffs, and in instructing the jury that the verdict must be for the defendant.

In regard to the rulings of the Court upon questions of evidence, we have but a word to say. The witness, Moller, having proved the signature of Guerard, the agent, to the bills of lading, was asked on cross-examination by the defendant, whether Guerard "was not forbidden to sign bills of lading for goods and commodities, when the goods and commodities were not actually delivered to the defendant company," to which he replied, "never to my knowledge," and then added that it was almost certain that he was not so forbidden, because it would have been prohibitory to business in Savannah, as the custom of the port was to sign bills of lading on railroad guarantees to deliver cotton to a specified steamer. This statement by the witness was in no manner responsive to defendant's question, and was but the mere expression of his opinion, and not testimony based upon knowledge. The Court was also right

Lazard *vs.* Merchants' and Miners' Transportation Co.

in refusing to allow the witness to testify as to the price of cotton in Baltimore, for the reason that the cotton mentioned in the bills of lading was to be delivered at Bremen, and not at Baltimore, and the damages, if any, which the plaintiffs could recover for breach of contract, would be the value of the cotton at Bremen.

We do not see on what ground the third exception can be maintained. Guerard the agent had signed, it is true, the bills of lading, acknowledging the receipt of the cotton, but it was beyond question competent for him to prove that the cotton had not in fact been delivered, and to explain the circumstances under which he was induced to sign them. And for the reasons already given, the evidence in regard to usage prevailing among the steamship companies to issue bills of lading upon railroad and cotton press receipts, was on motion of defendant properly stricken out. It was properly stricken out because the bills of lading now in controversy were not issued upon such receipts.

The evidence too in regard to the understanding among bankers in New York, that the buyer always assumes that the goods mentioned in a bill of lading have been actually delivered, was properly excluded. The liability of the carrier under a bill of lading in no manner depends upon the understanding of bankers or brokers in the City of New York; but is governed and must be determined by the settled principles of commercial law.

Finding no error in the rulings below, the judgment will be affirmed.

*Judgment affirmed.*

(Decided 21st June, 1893.)