[No. 6019. Decided April 19, 1906.]

## ROY & ROY, *Appellant,* v. NORTHERN PACIFIC RAILWAY COMPANY, *Respondent.*[1]

CARRIERS—BILL OF LADING—AUTHORITY OF AGENT TO ISSUE. The agent of a railway company has no authority to issue a bill of lading for goods to be transported unless the goods have been actually received, even as to an innocent transferee of the bill of lading.

SAME—NEGOTIABILITY. Bal. Code, § 3598, makes bills of lading negotiable for the purpose of transferring the title to the goods actually represented thereby, but not in the sense that bills and notes are negotiable and proof against defenses in the hands of *bona fide* purchasers.

SAME—ESTOPPEL TO DISPUTE AUTHORITY. A railway company is not estopped to dispute the authority of its agents to issue bills of lading without the actual receipt of any goods for transportation, and a purchaser without knowledge of the facts respecting the agent's authority takes a bill of lading at his own risk.

SAME — DEFENSES — FRAUDULENT ISSUE. Where no goods have actually been received for shipment, the carrier may show that a bill of lading has been fraudulently or erroneously issued, as a defense against liability to a *bona fide* purchaser or holder.

[1]Reported in 85 Pac. 53.

SAME—PLEADING—ANSWER. It is not necessary to plead a defense to liability upon a bill of lading when all the facts constituting the defense appear on the face of the complaint.

Appeal from a judgment of the superior court for King county, Morris, J., entered June 23, 1905, upon sustaining a demurrer to the complaint in an action upon a bill of lading. Affirmed.

*Wright & Kelleher,* for appellant.
*Carroll B. Graves,* for respondent.

CROW, J.—This action was instituted by the appellant, Roy & Roy, a corporation, against respondent, Northern Pacific Railway Company, a corporation, upon two certain bills of lading claimed to have been issued by said respondent for two carloads of shingles. The complaint contains two causes of action, but as the questions raised thereby are identical, we will state the first cause only. The complaint, for the first cause of action, alleges, that on November 23, 1903, the respondent, through its agent at Ravensdale, Washington, issued and delivered to one W. J. Doucett a certain bill of lading, acknowledging the receipt of 231¼ M. 16 5x2 clear shingles, shipped from Covington, Washington, on said date, to Eaton Prairie, Minnesota, billed from the Allen Shingle Company to Roy & Roy, the appellant; that in truth said respondent had not received from said Allen Shingle Company, or said Doucett, or any other person, said shingles, or any shingles, at the time of the issuance of said bill of lading, and that there were no shingles loaded on the car named therein; that said Doucett was not the agent of the said Allen Shingle Company, had no authority to bill or ship any shingles for said company, was not the owner or in control of any shingles for said company, all of which facts were at the time well known to respondent, or could have been learned by the most casual inquiry; that on November 21, 1903, said Doucett presented said bill of lading to the appellant Roy & Roy, who, relying upon the representations therein contained, and

believing respondent had said shingles in its possession, paid
to said Doucett the sum of $326.34, the value of said shingles;
that by reason of the negligence of the respondent in issuing
said bill of lading to said Doucett, he was enabled to defraud
appellant out of said sum of $326.34; that said Doucett is
wholly insolvent, and that prior to the commencement of this
action appellant demanded that respondent repay the said
sum of $326.34, or deliver said shingles to it, which the said
respondent refused to do. To each cause of action of the
complaint, the respondent interposed a general demurrer,
which being sustained, the appellant refused to plead further.
Thereupon judgment was entered dismissing the action, and
this appeal has been taken.

The principal question to be determined on this appeal is
whether the respondent railway company is liable to appellant
for the value of said shingles. The appellant has affirma-
tively pleaded that no shingles were ever received by respond-
ent, thus showing the false and fraudulent character of the
recitals contained in the bill of lading. But as it was issued
by one H. S. McIntyre, respondent's agent at Ravensdale,
who was authorized to issue bills of lading for merchandise
actually received for shipment, appellant contends that the
respondent is estopped from relying upon the defense that
it received no shingles, not only because it held out McIntyre,
its agent, as having full authority to issue such bill of lading,
but for the further reason that said bill of lading as executed
is negotiable and transferable by indorsement and delivery,
under the laws of this state and the usages and customs of
merchants and shippers generally, and that appellant, relying
upon said bill of lading and on the truth of its recitals, and
believing the shingles had been actually delivered to respond-
ent, paid to said Doucett the value of said shingles, and
thereby became an innocent purchaser for value.

Appellant, in support of its contention, has cited numerous
authorities, including *Sioux City etc. R. Co. v. First Nat.
Bank,* 10 Neb. 556, 35 Am. Rep. 488; *Brooke v. New York*

*etc. R. Co.,* 108 Pa. St. 529, 56 Am. Rep. 235; *Armour v. Michigan etc. R. Co.,* 65 N. Y. 111, 22 Am. Rep. 603; *Dickerson v. Seelye,* 12 Barb. 99; *Wichita Sav. Bank v. Atchison etc. R. Co.,* 20 Kan. 519; *Watson v. Memphis etc. R. Co.,* 9 Heisk (Tenn.) 255; *Bank of Batavia v. New York etc. R. Co.,* 106 N. Y. 195, 60 Am. Rep. 440; *St. Louis etc. R. Co. v. Larned,* 103 Ill. 293; *Smith v. Missouri Pac. R. Co.,* 74 Mo. App. 48. These cases are cited here upon the theory that, as the agent McIntyre was employed by respondent to receive goods for shipment, and to issue bills of lading therefor, and as he as such agent actually issued the bill of lading in question, containing a recital of the receipt of the shingles, as between respondent and appellant, an innocent third party, who has acted in good faith while relying upon said recital, the respondent should be estopped from denying the truth of its statements, and from making the defense that the shingles had not been actually received. It is true that the authorities above cited sustain appellant's position, still we find that the English courts, the supreme court of the United States, the Federal courts generally, and many of the state courts have, in numerous well considered cases, announced an entirely opposite doctrine, which we will now announce as the law of this state. Where a transportation company shows that merchandise was not actually received by it, and that a bill of lading has been issued by its agent, either through fraud or mistake, the supreme court of the United States, since followed by other courts, has held that, as the receipt of the goods lies at the foundation of the contract to carry and deliver, there can be no such contract unless the goods have actually been received, and that an agent of the carrier has no authority to issue a bill of lading without actual receipt of the goods, and cannot bind the carrier, even as to an innocent transferee or pledgee of the bill of lading. 6 Cyc. 419; *Grant v. Norway,* 10 C. B. 665; *Jessel v. Bath,* L. R. 2 Ex. 267, 36 L. J. Ex. 149; *Meyer v. Dresser,* 16 C. B. (N. S.) 646; *Brown v. Powell Coal Co.,* L. R. 10 C. P.

562; *Cox, Patterson & Co. v. Bruce & Co.,* 18 Q. B. D. 147; *Pollard v. Vinton,* 105 U. S. 7, 26 L. Ed. 998; *Friedlander v. Texas etc. R. Co.,* 130 U. S. 416, 9 Sup. Ct. 570, 32 L. Ed. 991; *Lazard v. Merchants' etc. Transp. Co.,* 78 Md. 1, 26 Atl. 897; *The Loon,* 7 Blatch. 244; *Robinson, McLeod & Co. v. Memphis etc. R. Co.,* 9 Fed. 129, and 16 Fed. 167; *Martin v. Railway Co.,* 55 Ark. 510; *Sears v. Wingate,* 3 Allen 103; *Hunt v. Mississippi Cent. R. Co.,* 29 La. Ann. 446; *Louisiana Nat. Bank v. Laveille,* 52 Mo. 380; *National Bank of Commerce v. Chicago etc. R. Co.,* 44 Minn. 224, 46 N. W. 342, 560, 20 Am. St. 566, 9 L. R. A. 263; *Black v. Wilmington etc. R. Co.,* 92 N. C. 42, 43 Am. Rep. 450; *Hazard v. Illinois etc. R. Co.,* 67 Miss. 32, 7 South. 280; *Dean v. King,* 22 Ohio St. 118.

The appellant, however, not only relies upon the doctrine of estoppel, but also contends that the bill of lading was negotiable and that it, as an innocent purchaser for value, should be protected, citing *First Nat. Bank v. Northern Pac. R. Co.,* 28 Wash. 439, 68 Pac. 965. While our statute, Bal. Code, § 3598, makes a bill of lading negotiable by indorsement for certain purposes, it is not negotiable in the same sense as promissory notes, bills of exchange or other commercial paper. In *First Nat. Bank v. Northern Pac. R. Co., supra,* we only held that a carrier issuing a bill of lading is bound to make delivery of the goods represented thereby to the holder thereof. In other words, that the assignment of the bill of lading confers upon the assignee such title to the goods as may have been held by the party to whom the bill of lading was originally issued. In *Yarwood v. Happy,* 18 Wash. 246, 51 Pac. 461, we, in substance, held that our statute was only declaratory of the previous common law rule concerning bills of lading, and should not be construed as making an indorsement effective for any purpose other than to transfer the property represented, citing with approval *Shaw v. Railroad Co.,* 101 U. S. 557, 25 L. Ed. 892, in which the supreme court of the United States said:

"Bills of lading are regarded as so much cotton, grain, iron, or other articles of merchandise. The merchandise is very often sold or pledged by the transfer of the bills which cover it. They are, in commerce, a very different thing from bills of exchange and promissory notes, answering a different purpose and performing different functions. It cannot be, therefore, that the statute which made them negotiable by indorsement and delivery, or negotiable *in the same manner* as bills of exchange and promissory notes are negotiable, intended to change totally their character, put them *in all respects* on the footing of instruments which are the representatives of money, and charge the negotiation of them with all the consequences which usually attend or follow the negotiation of bills and notes."

The negotiable character of a bill of lading is discussed in *Pollard v. Vinton, supra,* where Justice Miller says:

"A bill of lading is an instrument well known in commercial transactions, and its character and effect have been defined by judicial decisions. In the hands of the holder it is evidence of ownership, special or general, of the property mentioned in it, and of the right to receive said property at the place of delivery. Notwithstanding it is designed to pass from hand to hand, with or without indorsement, and it is efficacious for its ordinary purposes in the hands of the holder, it is not a negotiable instrument or obligation in the sense that a bill of exchange or a promissory note is. Its transfer does not preclude, as in those cases, all inquiry into the transaction in which it originated, because it has come into hands of persons who have innocently paid value for it. The doctrine of *bona fide* purchasers only applies to it in a limited sense. It is an instrument of a twofold character. It is at once a receipt and a contract. In the former character it is an acknowledgement of the receipt of property on board his vessel by the owner of the vessel. In the latter it is a contract to carry safely and deliver. The receipt of the goods lies at the foundation of the contract to carry and deliver. If no goods are actually received, there can be no valid contract to carry or to deliver."

In *Lazard v. Merchants' etc. Transp. Co., supra,* the court of appeals of Maryland said:

"No principle is better settled by the commercial law, than that neither the master of the ship nor the agent of a transportation company has the right to sign bills of lading, until they have been actually put on board of the ship, or delivered into the possession of the company. And if a master or agent signs a bill of lading for goods which have not been delivered to the carrier, the owner of the ship, or other means of transportation is not liable either to the shipper, or to one dealing with or making advances in good faith upon the bill of lading. It is hardly necessary to say that bills of lading are not by the commercial law negotiable in the same sense as bills of exchange and promissory notes. They are merely the evidence of ownership, general or special of the property mentioned in them, and the right to receive said property at the place of delivery; and one making advances of money upon them does so at his own risk, and with notice of the limitation as to the power or rights of the master or agent to sign the same."

In *The Carlos F. Roses,* 177 U. S. 655, 20 Sup. Ct. 803, 44 L. Ed. 929, Chief Justice Fuller said:

"Bills of lading stand as the substitute and representative of the goods described therein, and while *quasi* negotiable instruments, are not negotiable in the full sense in which that term is applied to bills and notes. The transfer of the bill passes to the transferee the transferror's title to the goods described, and the presumption as to ownership arising from the bill may be explained or rebutted by other evidence showing where the real ownership lies. A pledgee to whom a bill of lading is given as security gets the legal title to the goods and the right of possession only if such is the intention of the parties, and that intention is open to explanation. Inquiry into the transaction in which the bill originated is not precluded because it came into the hands of persons who may have innocently paid value for it."

See, also, *Friedlander v. Texas etc. R. Co.,* 130 U. S. 416, 9 Sup. Ct. 570, 32 L. Ed. 991; *Anderson v. Portland Flouring Mills Co.,* 37 Ore. 483, 60 Pac. 839, 82 Am. St. 771, 50 L. R. A. 235.

We cannot adopt the doctrine of estoppel as contended for by the appellant. Respondent's agent only had authority

to issue bills of lading for goods actually received for transportation, but had no authority to issue any such bills for goods not received. The railroad company was not a broker dealing in bills of lading, but was only engaged in the business of transporting goods and merchandise. This fact was well known to the shipping public. Those who dealt with the respondent knew that its business was that of transportation only. When a bill of lading issued by it is assigned to a third party who purchases the same or makes advances thereon, such third party is presumed to have knowledge of these conditions. One who purchases a bill of lading does it at his own risk, and must know that the company will be permitted to show that the goods were never received by it, if such be the fact. If, therefore, a transportation company is able to show that a certain bill of lading has been fraudulently or erroneously issued, no goods having been actually received for shipment, such showing will constitute a complete defense against any liability upon its part to a *bona fide* purchaser or holder.. It was not necessary for respondent to plead such defense in this case, as all the essential facts appear upon the face of the complaint. In *Friedlander v. Texas etc. R. Co., supra,* Chief Justice Fuller says:

"It has been frequently held by this court that the master of a vessel has no authority to sign a bill of lading for goods not actually put on board the vessel, and, if he does so, his act does not bind the owner of the ship even in favor of an innocent purchaser. *The Freeman v. Buckingham,* 18 How. 182, 191; *The Lady Franklin,* 8 Wall. 325; *Pollard v. Vinton,* 105 U. S. 7. And this agrees with the rule laid down by the English courts. *Lickbarrow v. Mason,* 2 T. R. 77; *Grant v. Norway,* 10 C. B. 665; *Cox v. Bruce,* 18 Q. B. D. 147. 'The receipt of the goods,' said Mr. Justice Miller, in *Pollard v. Vinton, supra,* 'lies at the foundation of the contract to carry and deliver. If no goods are actually received, there can be no valid contract to carry or to deliver.' 'And the doctrine is applicable to transportation contracts made in that form by railway companies and other carriers by land, as well as carriers by sea,' as was said by Mr. Justice

Matthews in *Iron Mountain Railway v. Knight,* 122 U. S. 79, 87, he adding also: 'If Potter (the agent) had never delivered to the plaintiff in error any cotton at all to make good the 525 bales called for by the bills of lading, it is clear that the plaintiff in error would not be liable for the deficiency. This is well established by the cases of *The Schooner Freeman v. Buckingham,* 18 How. 182, and *Pollard v. Vinton,* 105 U. S. 7.'

"It is a familiar principle of law that where one of two innocent parties must suffer by the fraud of another, the loss should fall upon him who enabled such third person to commit the fraud; but nothing that the railroad company did or omitted to do can be properly said to have enabled Lahnstein to impose upon Friedlander & Co. The company not only did not authorize Easton to sign fictitious bills of lading, but it did not assume authority itself to issue such documents except upon the delivery of the merchandise. Easton was not the company's agent in the transaction, for there was nothing upon which the agency could act. Railroad companies are not dealers in bills of exchange, nor in bills of lading; they are carriers only, and held to rigid responsibility as such."

While there is some conflict on the question of the respondent's liability in the decisions of the various state courts, we find no such conflict in the decisions of the Federal courts, which uniformly hold respondent not liable. We not only think the current of authority sustains the position assumed by the respondent here, but also feel that in announcing our opinion we should act in harmony with the Federal courts. This was the view taken by the supreme court of Minnesota in the case of *National Bank of Commerce v. Chicago etc. R. Co., supra,* where it said:

"But on questions of commercial law it is eminently desirable that there be uniformity. It is even more important that the rule be uniform and certain than that it be the best one that might be adopted. Moreover, on questions of general commercial law the Federal courts refuse to follow the decisions of the state courts, and determine the law according to their own views of what it is. It is therefore very desirable that on such questions the state courts should conform

to the doctrine of the Federal courts. The inconvenience and confusion that would follow from having two conflicting rules on the same question in the same state, one in the Federal courts and another in the state courts, is of itself almost a sufficient reason why we should adopt the doctrine of the Federal courts on this question. To do otherwise, so long as the jurisdiction of those courts so largely depends on the citizenship of suitors, would really result in discrimination against our own citizens." .

We think the complaint failed to state a cause of action, and that the trial court committed no error in sustaining the demurrer. The judgment is affirmed.

MOUNT, C. J., FULLERTON, HADLEY, ROOT, and DUNBAR, JJ., concur.