McELVEEN & HARDAGE *v.* SOUTHERN RAILWAY
COMPANY, and *vice versa.*

1. Bills of lading belong in the class of written contracts and come within
   the rule which prohibits the introduction of parol evidence to contradict
   or vary their terms.
2. When under the terms of a contract for carriage a carrier obligates itself
   to carry freight to one of the termini of its railroad and there deliver the

same to a connecting line of railroad or steamers, to be transported to destination, evidence of a parol representation that the freight would be delivered to a connecting railroad and not to a steamer is inadmissible to vary the terms of the written agreement; and if in fact such goods were delivered to a carrier by water and transported to destination and placed in the warehouse of such carrier by water, subject to the order of the consignee, such goods were not in fact at that time "lost" so as to afford a right of action in favor of the consignor against the initial carrier for failing to trace such freight, under the terms of section 2318 of the Civil Code, as lost goods.

Argued October 11,—Decided November 9, 1899.

Action for damages.    Before Judge Reagan.    Pike superior court.    April term, 1899.

*J. J. Rogers, S. N. Woodward* and *Alexander & Lambdin*, for plaintiffs.    *C. E. Battle* and *E. F. Dupree*, for defendant.

LITTLE, J.    McElveen & Hardage instituted an action against the Southern Railway Company.    One part of the petition clearly shows that it was sought to recover the value of certain goods shipped by them, under the provisions of sections 2317 and 2318 of the Civil Code, making it the duty of the initial carrier, on notice, to trace lost, damaged, or destroyed goods, when in order to reach destination the freight must be transported by two or more common carriers of a connecting line.    The defendant filed a demurrer, which the court sustained, to a part of the petition, leaving the case to proceed as an action to recover for a failure to trace the goods. It appears from the brief of evidence, that the plaintiffs in error, on November 5, 1897, delivered to the defendant company at Concord, in Pike county, a number of fruit-trees consigned to Gilham, Ft. Gaines, Ga., for which they received a bill of lading.    One of the consignors testified that, previously to and after the issuing of the bill of lading, the agent of the railroad company at Concord told him that the boats were not running between Columbus and Ft. Gaines, and he would not bill the trees by boat from Columbus for that reason.    It was also shown that the other of the consignors, on November 15, 1897, went to the railroad depot in Ft. Gaines, Ga., and called for the trees, and was notified that they had never arrived. The trees were subsequently found in the river warehouse in

Ft. Gaines, Ga., and had never been called for there, nor at the wharf of the steamboats running to Ft. Gaines. It also appears, from a letter in evidence, that the trees arrived at Ft. Gaines by boat from Columbus on the 15th or 16th of November. It was also shown that the defendant company, on the 15th of November and subsequently thereto, was notified by the consignors that the trees were lost, and it was asked that they be traced, to which notice and request no response was made. It was further shown that the trees should have been in good condition on the 16th of November. The bill of lading was introduced in evidence. It acknowledged the receipt of two boxes of fruit-trees consigned to C. W. Gilham, Ft. Gaines, Ga., to be shipped by the defendant railroad company from Concord to Columbus, Ga. It was an ordinary contract of affreightment, containing a stipulation that the goods were to be transported as specified, and at the end of the initial carrier's line to be delivered to the agents of connecting railroad companies or steamers, to be again so delivered until they should arrive at the place named as the point of destination in the bill of lading. At the conclusion of the evidence, the defendant moved for a nonsuit, which was granted, and the plaintiffs excepted. Defendant also, being dissatisfied with certain rulings of the court, filed a cross-bill of exceptions. The two writs of error were heard together in this court, and will be here considered and disposed of together. It is difficult to determine, from an examination of the seventh and tenth paragraphs of the petition as originally filed, whether by the allegations made in those paragraphs it was sought to recover damages from the defendant railroad company for a breach of duty in failing to transport the goods within a reasonable time, or for the loss of the goods in transit, or for a diversion of the freight from a specified route of shipment. Being thus confused, it was not error to strike these paragraphs on demurrer made thereto. The other allegations made set out a cause of action, and the case was properly allowed to proceed as an action to recover the damages prescribed by law for a failure on the part of the initial carrier to trace goods which had been lost en route to the point of destination.

The plaintiffs complain because the court at the conclusion of their evidence granted a nonsuit. The position taken is, that by agreement with the railroad company, when the goods arrived at Columbus, which was a terminus of the defendant's railroad, they were to be delivered to another railroad line for the purpose of being transported to Ft. Gaines, and that they, therefore, were under no duty to seek the trees at the warehouse of a water carrier in Ft. Gaines, and that when they enquired at the railroad depot in Ft. Gaines and found that the trees had not arrived by rail, they were in fact lost as to the consignors, and it was the duty of the defendant company, on notice of loss and a request to trace the trees, to do so; that they had no right to expect that they would be delivered to a steamer at Columbus, and that such a delivery was a violation of the contract, and, notwithstanding the trees had in fact been transported to Ft. Gaines by steamer, they were not chargeable with any laches in their failure to discover the fact until after they had become worthless by being kept out of the ground. It therefore becomes important to ascertain what was the contract of carriage. McElveen, one of the consignors who shipped the goods for his firm, testified that on the day the trees were shipped he had a conversation in Concord with the railroad agent. He had a similar conversation before and after a delivery of the bill of lading. In these conversations the agent stated that boats were not running between Columbus and Ft. Gaines, and that he would not bill the trees by boat on that account. McElveen also testified that he accepted the bill of lading as the contract between the railway company and his firm as to the shipment of the trees. If it be contended that this evidence supports a theory which would entitle the plaintiffs in error to recover because of a contract subsequent to the issuance of the bill of lading that the trees should reach Ft. Gaines by rail and not by boat, it will be seen that that theory is not supported by this evidence, because it is shown that the trees were shipped on the day of the issuance of the bill of lading, and it would be too late then for the railroad agent to have billed the goods by any route, as they must necessarily have already been billed; and, fairly interpreted, the evidence

in relation to what the agent said as to the route by which he would bill the goods must have occurred prior to the issuance of the bill of lading, and so interpreted it is entirely consistent with the other evidence that the agent should have stated after the shipment that the trees would go by rail and not by boat. Such statements could become no part of the contract of shipment, because the trees had already been shipped; and if these subsequent statements are to be relied on as furnishing a right of recovery, then they must be treated as a misrepresentation of the route by which the goods were shipped, rather than any part of a contract stipulating as to the route by which the trees would be shipped. As this action is not brought to recover because of such misrepresentation, but is confined to a claim for failure to trace the goods, it is not necessary to discuss the legal effect of such misrepresentations, if any were made. So, therefore, to determine whether there was error in granting the nonsuit under the allegations made in this case, it is only necessary to ascertain the terms of the contract as to the route by which the goods would be forwarded after reaching the terminus of the defendant company. The evidence, as before set out, shows that before the issuance of the bill of lading the agent of the railroad company told the owner of the trees that they would not be carried by boat from Columbus, because at that time the boats were not running. But the bill of lading thereafter issued, in terms, provides for the transportation of the trees by the initial carrier to Columbus and the delivery in good order there to a connecting railroad or steamer, to be forwarded to destination. Confessedly, the literal terms of the bill of lading were complied with, inasmuch as the goods were transported to Columbus and there delivered to a line of steamers which reached Ft. Gaines by the Chattahoochee river. As a matter of fact the goods were transported by river and delivered at the wharf or warehouse of the steamer, subject to the order of the consignee. There can be no question that the stipulations contained in the bill of lading must govern. These instruments are written contracts.

In the case of *Central Railroad Co.* v. *Hasselkus*, 91 *Ga.* 385, our present Chief Justice said, in delivering the opinion of this

court, that: "The office of a bill of lading is to embody the contract of carriage, as well as to evidence the receipt of the goods; and when the shipper accepts it without objection before the goods have been shipped, and permits the carrier to act upon it by proceeding with the shipment, it is to be presumed that he has accepted it as containing the contract, and that he has assented to its terms." To the same effect, also see *Western & Atlantic R. R. Co.* v. *Ohio Valley Banking & Trust Co.*, 107 *Ga.* 512. Mr. Hutchinson in his Law of Carriers, § 126, in referring to this class of contracts, says: "Except, however, in the recital or acknowledgment of the receipt of the goods and of their quantity and condition when received, bills of lading are strictly written contracts between the parties, and come within the general rule which prohibits the introduction of parol evidence to contradict or vary such contracts." From these rules it must follow, as a corollary, that if no mistake or fraud is charged in the execution of the contract, it will be conclusively presumed that all oral negotiations and representations, not only as to the terms and conditions on which the goods were received, but also as to the route by which they are to be forwarded, are merged in the bill of lading, which will be received as the sole evidence of the agreement between the parties. 109 Ind. 422. See also *Richmond & Danville R. R. Co.* v. *Shomo*, 90 *Ga.* 498; *Bedell* v. *Richmond & Danville R. R. Co.*, 94 *Ga.* 22. The bill of lading, then, must in this case be taken as the evidence of the contract between the parties, and by its terms the contract of carriage was complied with when the railroad company delivered the goods to the connecting water carrier at Columbus. It must follow that the plaintiffs could not assume that the goods were lost on November 15, when they enquired for them from the railroad-agent in Ft. Gaines and found that they had never reached that point by rail. It appears as a matter of fact that at that time the goods were being transported by the connecting water carrier, and on the 15th or 16th of November reached Ft. Gaines and were ready for delivery to the consignee. Inasmuch as the contract authorized the shipment by the water route, it was the duty of the consignee to enquire for his goods from that carrier. The goods were not

lost at all, and, not being so, the consignor had no right to require the initial carrier to trace them.. These facts appear from the evidence of the plaintiffs, and under it they had no right of recovery, and a nonsuit was properly awarded. It must not be understood that we intend in any way to qualify the application of section 2276 of the Civil Code. That section declares that a common carrier may not limit his liability by any notice given either by publication or by entry on receipts given or tickets sold. He may do so by an express contract. Where the effect of any notice or entry made on a bill of lading is to limit the legal liability of the carrier, and the contract embodied in such bill of lading has not been expressly assented to by the consignor, such a provision is void. This statute does not at all conflict with what we have above said. In the case at bar the liability of the carrier for the value of the goods, for their prompt and safe delivery, is in no way limited. This being so, the doctrine that a written contract can not be varied by parol evidence governs.

A cross-bill was filed by the defendant below, alleging certain rulings of the judge to be error, and raising the question of the constitutionality of the act under which the suit was brought, as codified in section 2317 of the Civil Code. But under the rule established by this court, that where the judgment complained of in the original bill of exceptions is affirmed the cross-bill will not usually be considered, the cross-bill is dismissed.

*Judgment on main bill of exceptions affirmed; cross-bill of exceptions dismissed. All the Justices concurring.*