## 1427. GEORGIA RAILROAD *v.* CREETY.

In interstate commerce the freight charges made for the transportation of goods are absolutely fixed by the schedule of rates and joint rates filed and posted in accordance with the act of Congress of June 29, 1906, known as the "Hepburn act." The shipper can not, except at his own risk, obtain information as to the rates otherwise than from these schedules. Though a common carrier, by mistake or otherwise, quotes a shipper a rate lower than that stated in the schedules, and delivers the goods upon payment of the charges calculated according to the rate so quoted, the carrier may nevertheless thereafter demand of the shipper the difference between the rate collected and that which should have been collected, and upon his refusal to pay may maintain an action therefor.

Complaint, from city court of Washington—Judge Hardeman. September 21, 1908.

Argued December 9, 1908.—Decided January 27, 1909.

Creety desired to ship oranges from Minorville, Florida, to Washington, Georgia, and asked Chapman, the railroad agent at the latter point, to name the rate. Chapman stated that he did not know the rates between these points, but he would find out what the rate was, and telegraphed the general freight agent to quote him the rate. The general freight agent telegraphed him that the rate was sixty-eight and four-tenths cents per 100 pounds, and Chapman quoted this rate to Creety. Acting on this information, Creety ordered a car-load of oranges, consisting of 345 boxes or crates. When the oranges arrived the way-bill had not been received, and the exact amount of freight due did not appear. Acting on the telegram received from the general freight agent, Chapman delivered the car-load of oranges to Creety, on his making a deposit of $190 to cover the freight; which amount was slightly in excess of the freight due at the rate of sixty-eight and four-tenths cents per 100 pounds. When the way-bill covering the shipment was received by Chapman, about two months after the freight had been delivered and the oranges had been sold on the basis of the freight rate quoted, it appeared that the rate of freight due was sixty-eight and four-tenths cents per standard crate of 80 pounds, instead of that rate per 100 pounds; and Chapman then first discovered that a mistake had been made in transmitting the telegram of the general freight agent to him. Chapman, acting for the railroad company, demanded the additional freight above the

sum deposited, amounting to $45.98, and payment was refused. The schedules containing the rates were on file and properly posted in the depot at Washington, Georgia, as required by the interstate-commerce act, and consisted of about fifteen hundred pages of printed matter.

The company sued Creety to recover the difference between the sum paid by him under the rate quoted and the sum which should have been paid according to the posted tariff. Upon the facts stated above appearing, the judge directed a verdict in Creety's favor.

*Joseph B. & Bryan Cumming*, for plaintiff in error.

*William Wynne, F. H. Colley*, contra.

POWELL, J. (After stating the foregoing facts.)

Most of the cases in which the question has arisen whether a rate quoted by a common carrier and acted on by the shipper may be disregarded if it subsequently appears to be different from the rate authorized by the published tariffs have been actions by the shipper against the carrier. In these cases it has been held almost uniformly that the shipper can not enforce against the carrier the agreed or misquoted rate—that the carrier may hold the goods until the charges according to the published tariffs have been paid. *Savannah, F. & W. Ry. Co.* v. *Bundick*, 94 Ga. 775 (21 S. E. 995) ; *Raleigh & Gaston R. Co.* v. *Swanson*, 102 Ga. 754 (28 S. E. 601, 39 L. R. A. 275) ; Suffern v. I., D. & W. R. Co., 7 Int. Com. Rep. 256, 278; G., C. & S. F. Ry. Co. v. Hefley, 158 U. S. 98 (15 Sup. Ct. 802, 39 L. ed. 910) ; Beale & Wyman, Railroad Rate Regulation, §947. Some of these cases, and among them the Georgia case of *S., F. & W. Ry. Co.* v. *Bundick*, supra, refer to the principle that where the parties have agreed to violate the law, the courts will not allow an action as to that matter in favor of either of them; and from this it might seem at first blush that the shipper and the carrier having contracted for the transportation of the goods at a rate the very charging or accepting of which is a violation of law, the whole contract of transportation would be unlawful, and that the courts would not give aid to the carrier seeking to collect for the transportation charges, or any part thereof, where it became necessary for the carrier to assume the rôle of plaintiff. Upon maturer reflection we are of the opinion that this position

is untenable. By the Hepburn act (Act of Congress of June 29, 1906, c. 3951; 34 Stat. 584 (U. S. Comp. St. Supp. 1907, p. 892)) it is unlawful for the carrier to enter into the transportation of the goods without first posting and filing the prescribed schedule of rates. Under the same act the carrier can not contract for or charge, and the shipper can not contract for or accept, directly or indirectly, any rate different from that published; and a wilful violation of this prohibition is penal as to both the offending parties. It follows that the legality of the transportation depends upon the publishing and the filing of the rates. In the present case this question is not involved, for the schedule of rates was regularly filed and posted. A contract or an agreement, executed or executory, for a rate different from the published rate is void itself, but does not render the transportation wrongful or the agreement to transport void or illegal in the sense that services performed under it may not lawfully become the subject-matter of an action in the courts. Merchants Cotton Press Co. v. Insurance Co., 151 U. S. 368, 388 (14 Sup. Ct. 367, 38 L. ed. 195, 205). The effect of the provisions of the Hepburn act above referred to is that whenever the required schedules of rates are filed and published, the carrier is in a position to undertake the carriage of goods, but that the question of the rates at which the goods shall be carried is not the subject-matter of contract; that much of what would otherwise be open to agreement is already absolutely fixed. The courts can not, without doing violence to the manifest spirit and purpose of this stringent, if we may not say drastic, though authoritative enactment, give effect to any conversation, agreement, conduct, or other acts of the parties attempting to vary or disregard the rate lawfully established, where it is sought thereby to enlarge or diminish rights or remedies otherwise existing. We recognize that these schedules are voluminous and intricate, so much so that many persons are unable to inform themselves as to the rates, though the schedules are before them; and it seems hard that the shipper who has sold his goods on the basis of the rate quoted him by the carrier should have to stand the loss of having the misquotation subsequently corrected; but the Congress of the United States has written the law as it is written, and has made no exception in favor of those persons who are

likely to incur loss from the reasons stated above; and the courts are not authorized to add any such exceptions. It may be that in some cases an action of deceit, or some similar action would lie in favor of the shipper against the carrier, where the latter had misquoted a rate, to the injury of the former. As to this we do not say. What we are compelled to hold is that where the transportation has taken place, the shipper is due the carrier the amount of charges required by the schedule of rates filed and published in accordance with the law, and that no agreement to the contrary can exempt him from liability for the sum thus due, and that if the carrier delivers the goods without collecting the full sum required by the tariffs, an action will lie in his favor to recover the unpaid balance. If the shipper, by reason of mistake or otherwise, overpays the carrier, he likewise has cause of action, and may recover the overcharge.           *Judgment reversed.*