DECIDED DECEMBER 21, 1916.

Indictment for perjury; from Worth superior court—Judge Cox. June 3, 1916.

Ragan & Maire, for plaintiff in error.

R. C. Bell, solicitor-general, F. A. Hooper & Son, J. H. Tipton, Perry & Williamson, R. S. Foy, C. W. Monk, Mark Tison, contra.

---

## 7593. SEABOARD AIR-LINE RAILWAY v. LUKE.

A bill of lading issued by a common carrier is a "contract in writing" within the meaning of section 4361 of the Civil Code, which provides that "all actions upon promissory notes, bills of exchange, or other simple contracts in writing shall be brought within six years after the same

become due and payable;" and, as such, it is binding upon the carrier and the shipper. It is also binding upon the consignee, or the "order-notify" consignee, where he purchases the bill of lading, makes no objection to its provisions, presents it to the carrier, and obtains possession of the goods shipped thereunder. Under such circumstances the provisions of section 4362 of the Civil Code do not apply, and he is bound by the written contract, as evidenced by the bill of lading, although it is not signed by him.

(a) It follows that a suit is not barred because not brought within four years from the accrual of the right of action, where it is a suit by a common carrier, against an "order-notify" consignee, to recover an undercharge of freight due on an interstate shipment, the contract sued upon being evidenced by a bill of lading issued ·by the initial carrier, signed by the shipper, and purchased by the defendant, who made no objection to any of its provisions, and who secured the goods shipped thereunder by presenting the bill of lading to the terminal carrier.

DECIDED DECEMBER 21, 1916.

Certiorari; from Irwin superior court—Judge George. May 17, 1916.

In November, 1909, J. C. Luke bought a carload of automobiles from the Reo Motor-Car Company, at Lansing, Michigan. When the car was shipped the automobile company obtained from the Lake Shore Railroad Company, the initial carrier, a bill of lading of the "order-notify" type. The shipment was consigned to the order of R. M. Owens & Co., notify J. C. Luke, Ocilla, Georgia, and was routed by the shipper over various connecting railroad lines, the last of the carriers being the Seaboard Air-Line Railway. The bill of lading was signed by the shipper and was endorsed by R. M. Owens & Co., the consignees, and a draft upon J. C. Luke, the "order-notify" consignee, was drawn and attached to the bill of lading and forwarded through regular banking courses to Ocilla, Georgia. Luke purchased the bill of lading, accepted it, presented it to the Seaboard Air-Line Railway, and demanded the freight called for in the bill, and it was delivered to him. The evidence for the plaintiff shows that through a mistake of the railroad agent there was an undercharge of $17 in the freight charges on the shipment. A demand was made upon Luke to pay this amount, and, upon his refusal to do so, the Seaboard Air-Line Railway brought suit for it in a justice's court, on a simple contract in writing as evidenced by the bill of lading, a copy of which was attached to the summons. The case was tried before the justice, and he decided in favor of the carrier. The defendant appealed to

a jury in the justice's court and obtained a verdict in his favor. A petition for certiorari was sanctioned, which upon review was overruled and dismissed by the judge of the superior court on the ground that the action was barred by the statute of limitations, it having been brought more than four years after the right of action accrued. To this judgment the carrier excepted. The suit was brought within six years from the time of the shipment.

*Rogers & Rogers,* for plaintiff.  *Melvin Meeks,* for defendant.

BROYLES, J.  (After stating the foregoing facts.)  Section 4361 of the Civil Code provides that "All actions upon promissory notes, bills of exchange, or other simple contracts in writing shall be brought within six years after the same become due and payable."  A bill of lading is a written contract.  *McElveen* v. *Southern Railway Co.,* 109 *Ga.* 249 (34 S. E. 281, 77 Am. St. R. 371) ; 1 Hutchinson on Carriers (3d ed.), § 157. The particular bill of lading in this case provides as follows : "It is mutually agreed as to each carrier of all or any of said property over all or any portion of said route to destination, and as to each party at any time interested in all or any of said property, that every service to be performed hereunder shall be subject to all the conditions, whether printed or written, herein contained (including conditions on back hereof) and which are agreed to by the shipper and accepted for himself and his assigns."  On the back of this bill of lading is the following provision :  "Sec. 8. The owner or consignee shall pay the freight, and average if any, and all other lawful charges accruing on said property."  Under this contract it is clear that the consideration thereof, as regards the railroad company, was the freight to be paid for the transportation of the shipment, and that the obligation to pay this freight was in writing.  The obligation to pay the legal rate of freight is binding, under the provisions of the bill of lading, irrespective of whether or not the specific rate of freight is stated in the bill of lading, since it is stated therein that it is received subject to the classifications and tariffs in effect on the date of its issue.  Upon an interstate shipment the freight charges for the transportation of the goods are fixed by the schedule of rates and joint tariffs filed and posted in accordance with the act of Congress of June 29, 1906, known as the "Hepburn act;" and though a common carrier, by mistake or otherwise, delivers goods upon the payment of a lower rate than that stated in

the schedules, the carrier may thereafter demand of the shipper the difference between the rate collected and that which should have been collected, and upon his refusal to pay may maintain an action therefor. *Georgia Railroad* v. *Creety,* 5 *Ga. App.* 424 (63 S. E. 528); *Central of Georgia Ry. Co.* v. *Curtis,* 14 *Ga. App.* 716 (82 S. E. 318); Great Northern Ry. Co. *v.* O'Connor, 232 U. S. 508 (34 Sup. Ct. 380, 58 L. ed. 703). Under these authorities it is clear that the amount to be paid for freight charges on every shipment is absolutely fixed, not by the rate stated in the bill of lading, but by the schedules and tariffs in effect on the date when the bill of lading is issued. It is also clear that the agreement to pay the proper freight charges is embodied in and is a part of the bill of lading, because it specifically recites that the shipment is received subject to the classifications and tariffs in effect on the date of the issue of the original bill of lading, this statement evidently referring to the classifications and tariffs mentioned in the decisions just cited, and to which the shipper agreed for itself and its assigns or transferees. According to the terms of the bill of lading the shipper agreed, for itself and its assigns or transferees, that the owner or consignee should pay the freight,—not necessarily the specific rate stated in the bill of lading, for that rate might be erroneous and in that contingency the agreement would be void, but the legal rate of freight as fixed by the schedules and tariffs as aforesaid. Such tariffs are a part of the bill of lading, and, therefore, a part of the written contract between the parties. Chicago, Rock Island & Pacific Ry. Co. *v.* Cramer, 232 U. S. 490 (34 Sup. Ct. 383, 58 L. ed. 697).

In an interstate shipment the bill of lading is the contract which controls the entire transaction. Georgia, Florida & Alabama Railway *v.* Blish Milling Co., 241 U. S. 190 (36 Sup. Ct. 541, 60 L ed. 948). An "order-notify" consignee who purchases the bill of lading, makes no objection to its provisions, and receives the goods shipped thereunder is bound by all of its provisions. He stands in the shoes of the shipper, being his transferee. He is more than a mere "naked" assignee. See *Paxson* v. *Warfield,* 6 *Ga. App.* 315 (65 S. E. 34); *Boatmen's Savings Bank* v. *Western & Atlantic R. Co.,* 81 *Ga.* 221 (7 S. E. 125); *Askew* v. *Southern Ry. Co.,* 1 *Ga. App.* 79 (58 S. E. 242); 4 R. C. L. 10, § 13. The terms of the contract or bill of lading are binding upon the "order-notify" con-

signee although not under his hand. The bill of lading discloses that the shipper signed it and that the contract was in writing, and it is not necessary that it should also be signed by the "order-notify" consignee. Where a writing sets forth the contract between the parties, the contract is binding although not under the hand of the party to be charged. In such a case section 4362 of the Civil Code does not apply, but section 4361 states the true rule. *Atlanta, Knoxville & Northern Ry. Co.* v. *McKinney,* 124 *Ga.* 929, 937 (53 S. E. 701, 6 L. R. A. (N. S.) 436, 110 Am. St. R. 215); *Hill* v. *Hackett,* 80 *Ga.* 53, 54 (4 S. E. 56). This ruling is not in conflict with the decisions in *Southern Express Co.* v. *Sinclair,* 135 *Ga.* 155 (68 S. E. 1113), and cases there cited, and *Small* v. *Jones,* 138 *Ga.* 521 (75 S. E. 605), the facts in those cases clearly distinguishing them from the case at bar.

The question of whether the suit was barred by the statute of limitations is practically the only point raised in this court. The record discloses that the true rate of freight over the route the shipment moved (and which was the route as given in the bill of lading) was $2.03 per cwt., that the total amount of the freight due was $203, and that the amount actually paid by the defendant, the "order-notify" consignee, was $186. It follows that there was an undercharge of $17, the amount sued for. The question as to whether, under such circumstances, the carrier would have the right (under section 4360 of the Civil Code) to bring suit within twenty years after the right of action accrued is not passed upon, the answer to that question not being necessary for the determination of this case.

The court erred in overruling the certiorari and in failing to render a final judgment for the plaintiff.

*Judgment reversed. Wade, C. J., concurs.*