17332. SMITH BROTHERS COMPANY *v.* CHARLESTON & WESTERN CAROLINA RAILWAY COMPANY.

One who acts as agent for another in receiving from a railway carrier a shipment of goods is not liable to the carrier for the amount of freight due in case of an undercharge, in the absence of facts justifying an estoppel by which he should be prevented from showing such agency. Under this principle the defendants in this case were not liable for the undercharge sued for. The verdict in the plaintiff's favor was unauthorized and must be set aside.

DECIDED FEBRUARY 26, 1927.

Complaint; from Richmond superior court—Judge A. L. Franklin. March 19, 1926.

*Callaway & Howard,* for plaintiff in error.
*Cumming & Harper,* contra.

Carriers, 10 C. J. p. 445, n. 15; p. 446, n. 31; p. 447, n. 42.

BELL, J. Charleston & Western Carolina Railway Company brought suit against Smith Brothers Company to recover the amount of freight charges due after payment of an undercharge. The court directed a verdict in favor of the plaintiff and the defendants have brought the case here by direct exceptions. The assignments of error do not raise the question as to whether there were issues of fact which should have been submitted to the jury, but seek reversal solely upon the ground that the verdict was unauthorized under the pleadings and the evidence. See *Gilliard* v. *Johnston,* 161 *Ga.* 17 (129 S. E. 434). These were the facts: Cooperative Federée de Quebec was the owner and shipper of a carload of hay, delivered to Montreal Railway Company at St. Aime, Quebec, Canada, under a bill of lading issued by that company calling for delivery to the order of the shipper, notify J. J. Langley, at Plum Branch, South Carolina. The bill of lading was indorsed by the shipper to Bank Dhochelaca, and by the latter indorsed to the order of the Merchants National Bank of Baltimore. It contained the following provisions: "It is mutually agreed, as to each carrier of all or any of said goods over all or any portion of said route to destination, and as to each party at any time interested in all or any of said goods, that every service to be performed hereunder shall be subject to all conditions herein contained and which are agreed to by the shipper and accepted for himself and his assigns. The surrender of the original order bill of lading properly indorsed shall be required before the delivery of the goods. Inspection of the goods covered by the bill will not be permitted unless provided by law or unless permission is indorsed on the original bill of lading or given in writing by the shipper." "The owner or consignee shall pay the freight and average, if any, and all other lawful charges accruing on said property, and, if required, shall pay the same before delivery."

Langley refused the shipment on its arrival at Plum Branch, and the car containing it remained there for several days on demurrage. The original bill of lading, having been acquired by Southeastern Molasses & Hay Company, of Columbia, South Carolina, was surrendered by that company to the Charleston & Western Carolina Company, the plaintiff, for a reconsignment of the shipment, which was made under a new bill of lading issued by that railway company, at Plum Branch, in which Cooperative Federée de Quebec

was again the consignor, and under which delivery was to be made to the order of the consignor, notify Lamb & Hollingsworth, Augusta, Georgia. This bill of lading contained the same conditions as those in the first bill above quoted. Lamb & Hollingsworth were merchant brokers in Augusta, Georgia, and Southeastern Molasses Company notified them of such shipment of hay to Augusta. Lamb & Hollingsworth sold the hay to Smith Brothers, the present defendants, for $392,—"that was the total amount Smith Brothers were to pay." The Molasses Company had notified Lamb & Hollingsworth of having drawn on them "for the full gross amount through the bank with instructions to the bank to accept as cash in part payment of this draft the expense bill." The railway company had given notice to Lamb & Hollingsworth, from its office at Augusta, Georgia, that the freight due on the shipment was $182.95. This notice was given before the sale to Smith Brothers and was "turned over" to them by Lamb & Hollingsworth, "along with the original memorandum invoice of the shippers." Under the agreement between Lamb & Hollingsworth and Smith Brothers the latter were to pay the freight and present the receipted freight bill "to the bank as a part payment and pay the bank the balance of the draft." The shipment, on its arrival at Augusta, had been stored in a public warehouse, operated by another, who delivered it from the warehouse to Smith Brothers. The bank that handled the draft and the bill of lading received payment from Smith Brothers, "in a receipted freight bill of $182.95, and the balance of $209.05 by their check." Smith Brothers paid to the railway company the amount of freight demanded. It later developed that the sum paid was $80.19 less than the amount due, and this difference is the subject-matter of the present suit.

In our opinion the defendants were not liable, and the verdict and judgment should be set aside. It has been stated broadly in many decisions, some of them by the courts of this State, that a common carrier may collect freight charges on goods either from the consignor or consignee unless it has entered into a special contract binding itself to collect the charges from one of them only. *Seaboard Air-Line Ry. Co.* v. *Montgomery*, 28 *Ga. App.* 639 (112 S. E. 652); *Southern Cotton Oil Co.* v. *So. Ry. Co.*, 147 *Ga.* 646 (95 S. E. 251). As to interstate shipments this rule would seem to require some modification, in view of the decision of the Su-

preme Court of the United States in Louisville & Nashville R. Co. v. Central Iron &c. Co., 265 U. S. 59 (44 Sup. Ct. 441, 68 L. ed. 900). In that case the Supreme Court said: "Where the payment is deferred, the contract may provide that the shipper agrees absolutely to pay the charges; or it may provide that he shall pay if the consignee does not pay the charges demanded upon delivery of the goods. Or the carrier may accept the goods for shipment solely on the account of the consignee; and knowing that the shipper is acting merely as agent for the consignee, may contract that only the latter shall be liable for the freight charges. Or both the consignee and shipper may be liable. Nor does delivery of goods to the carrier necessarily import, under the general law, an absolute promise by the shipper to pay the freight charges. . . To ascertain what contract was entered into we look primarily to the bills of lading, bearing in mind that the instrument serves both as a receipt and a contract. . . Ordinarily, the person from whom the goods are received assumes the obligation to pay the freight charges; and his obligation is ordinarily a primary one. This is true even where the bill of lading contains a provision imposing liability upon the consignee. For the shipper is presumably the consignor; the transportation ordered by him is presumably on his own behalf; and a promise by him to pay therefor is inferred as a promise to pay for goods is implied, when one orders them from a dealer. It may be shown by the bill of lading or otherwise that the shipper of the goods was not acting as owner; that this fact was known by the carrier; that the parties intended not only that the consignee should assume an obligation to pay the freight charges, but that the shipper should not assume any liability whatsoever therefor, or that he should assume only a secondary liability." In that case it was ruled that "To enforce payment of freight charges by a shipper only secondarily liable, the carrier must first make effort to collect from those primarily liable." But the doctrine was still adhered to, as laid down in Pittsburg &c. R. Co. v. Fink, 250 U. S. 577 (40 Sup. Ct. 27, 63 L. ed. 1151), that "A consignee by accepting the shipment becomes liable as a matter of law for the full amount of the tariff charges, whether they are demanded at the time of delivery or not."

In St. Louis Railway Co. v. Republic Box Co., 12 Fed. (2d series), 441, decided by Judge Hutcheson of the southern district

of Texas, the Box Company delivered to a railway company for shipment to East St. Louis, on bills of lading declaring the railway company the shipper and the Eastside Packing Company the consignee. There was no testimony as to the ownership of the freight. The Box Company gave to the joint agent of the receiving carrier and other companies, in charge of the freight office of such companies, having general authority to control the routing of shipments, instructions to "ship cars over the Gulf, Colorado & Santa Fé Company at a rate of 32-½ cents." The legal rate on the route taken was 65 cents per hundred, whereas by a different route the correct rate would have been only 32-½ cents. This rate only was charged. It was later discovered that 65 cents should have been collected. The question was whether the Box Company was liable for the difference. In the opinion in that case the court said, "But it is also true that courts will not literally enforce rates where the individual circumstances of the particular case make it certain that the invocation of the principle is an absurdity; for while it must be admitted that the theory of uniformity has made it very difficult to do justice in the individual case, the Supreme Court did, in St. Louis R. Co. *v.* Spring River Stone Co., 236 U. S. 718, find itself able to apply reason in the application of the rule, and in L. & N. R. Co. *v.* Central Iron &c. Co., 265 U. S. 70 [supra], announce a rule for the application of the principle which will go far toward relieving shippers of the burden now unreasonably imposed upon them to know the tariff better than railroad agents do, while compelling railroad companies and their agents to exercise ordinary care and good faith in quoting and applying rates, or to abide the consequences of their failure to do so. If, as a result of this decision, these questions of undercharge will be disposed of as they should have been from the beginning, with an eye as much to the practical injustice of the particular case as to the sanctity of the general rule, the business of shipping freight will not be as perilous to the shipper as it has been, and a rule against discrimination designed to protect shippers will not be, as it has often been in the past, a sword to destroy them." A similar case to that from which we have just quoted is Cincinnati R. Co. *v.* Beveridge, 8 Fed. (2d) 372. See also Davis *v.* Akron Co., 296 Fed. 675. We may concede in the present case, however, that the defendants would be liable if they were consignees. In-

deed, under the authorities, there seems to be no escape from this view. We think, though, that all the decisions to the effect that consignees who accept the goods are liable for the freight, even in cases of undercharges, where both the agent of the carrier and the consignee are ignorant in fact of the correct rate, should be distinguished from a case like the present, in which the person receiving the shipment can not, in our view, be regarded as a consignee. The uniform bills of lading act of August 29, 1916, defines a consignee as the person named in the bill of lading as the one to whom delivery of the goods is to be made, and the holder of the bill of lading as one who has both actual possession of the bill and a right of property therein. *Central of Ga. Ry. Co.* v. *Evans,* 35 *Ga. App.* 438 (134 S. E. 122). Under the facts appearing, it would seem incorrect to regard the defendants either as consignees or as holders. Differently from either, they were mere agents of Lamb & Hollingsworth, the order notify consignee. See *Seaboard Air-Line Ry. Co.* v. *Luke,* 19 *Ga. App.* 100, 103 (90 S. E. 1041). *They did not buy hay to be shipped, nor hay in transit, nor did they buy a bill of lading. The hay was at the time in Augusta, stored in a warehouse by and for the benefit of the plaintiff railway company. The defendants were buying hay delivered in Augusta.* If more than the purchase price had been demanded of them as a freight charge, they could have refused to accept the goods, because under their contract with Lamb & Hollingsworth they bought the carload of hay for a fixed price.

Counsel for the defendant refer to the clause of the bill of lading that "The owner or consignee shall pay the freight . . before delivery," and say that the defendants were owners of the shipment when it was delivered. Irrespective of what may be the effect of the quoted clause as between the carrier and the consignee (N. Y. Central R. Co. v. Ross Lumber Co., 234 N. Y. 261, 137 N. E. 324, 24 A. L. R. 1160), we can not agree that the defendants were owners *in accepting* the freight from the carrier's warehouseman. As was said above, they were buying hay delivered, and *it took delivery,* either actual or constructive, to make them owners. Civil Code (1910), § 4125.

In L. & N. R. Co. v. Sloss-Sheffield Co., 269 U. S. 217 (46 Sup. Ct. 73, 70 L. ed. 242), the facts, as summarized in the 8th headnote, were as follows: "A manufacturer sold and shipped pig

iron f. o. b. destination, to buyers named as consignees in straight bills of lading; the iron was invoiced and charged on the seller's books at the full delivered price, and the consignees physically paid the freight upon acceptance of delivery; the sales contracts, unknown to the carrier, declared the price to be based on the existing freight rate (specifying it) and provided: that the buyers should have the benefit of any decline, but must pay any advance in the freight rate, that the freight should be paid in cash and the balance of the price 30 days from average date of monthly deliveries, and that the seller would not be liable for any overcharge in freight when correct rate was expressed in the bill of lading." The freight rates proving excessive, the consignor brought suit against the railway company for a reparation to the amount of the excess. The Supreme Court held that the action by him was maintainable, and said that the consignee or purchaser, in paying the freight, acted solely as the consignor's agent. While the court in that case was not dealing with a question of liability such as we have here, yet, under facts bearing a similitude to those of the present case, the court recognized that the consignee was the consignor's agent. The consignee in that case doubtless could have been held liable for an undercharge in freight if it had existed, notwithstanding the principle of agency. That decision, however, supports our conclusion in the present case, to the effect that the defendants were agents for Lamb & Hollingsworth. Since they received the goods merely as such agents and were not, as in the Schloss-Sheffield case, parties to the bill of lading, they were not liable for the undercharge. But it is said that the carrier had no knowledge of such agency and dealt with the defendants as owners and consignees, and should not be affected by such undisclosed relationship to the order notify consignee. N. Y. Central R. Co. *v.* York & Whitney Co., 256 U. S. 406 (41 Sup. Ct. 509, 65 L. ed. 1016); Union Pacific R. Co. *v.* American Smelting &c. Co., 202 Fed. 720 (121 C. C. A. 182). While it is true that, the plaintiff *could not* be estopped, though the defendants *might* be, there is no ground for estopping them merely in the fact that the carrier did not know to deal with them as agents of Lamb & Hollingsworth. It has in no way altered its position by reason of such fact. Its agent's failure to collect the correct freight was not because of confidence in the reliability and willingness of the defendants to

pay, but because he misconceived the correct amount to be collected. The same thing would have happened if either cooperative Federée de Quebec, or Southeastern Molasses Company, or Lamb & Hollingsworth had called for and accepted the shipment. We may, for the purpose of this case, concede that some one is liable to the plaintiff for the amount of the freight sued for in this case. The plaintiff's right and duty to collect the correct freight from some one, though absolute, does not necessarily mean that they should collect it from the person to whom they delivered the goods. If that were true, every drayman, porter, employee, or servant who calls for and receives the goods for another would himself become liable for the freight charges. This would be stretching the law into an absurdity. Much has been said about the release of the carrier's lien. This lien is released to the owner, and not to one acting for him. The defendants' paying the freight was merely in partial discharge of their liability to Lamb & Hollingsworth for the purchase-money of the *hay,* the subject-matter of the contract. As already stated, the evidence shows they did not buy the bill of lading. It was not indorsed by the "notify consignee," and was delivered to the defendants only for surrender to the carrier on behalf of the consignee or holder in conclusion of the transaction between those parties. In nothing we have said have we intended to intimate that any particular person, not a party in this record, is liable for the charge. There are several persons connected with the shipment, from any one of whom the defendant might possibly be entitled to exact payment. What we hold is, there is no liability against the present defendants.

*Judgment reversed. Jenkins, P. J., and Stephens, J., concur.*